# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

  v.              Case No. 08-CR-338

**WILLIAM JOURNEY**
   **Defendant.**

## SENTENCING MEMORANDUM

Defendant William Journey pleaded guilty to Hobbs Act robbery, 18 U.S.C. § 1951, and brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), and I set the case for sentencing. In imposing sentence, I first calculated the advisory guideline range, then determined the actual sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

### I. GUIDELINES

Defendant's pre-sentence report ("PSR") recommended a base offense level of 20 under U.S.S.G. § 2B3.1(a), with 2 level enhancements because defendant took the property of a financial institution, § 2B3.1(b)(1), and stole more than $50,000, § 2B3.1(b)(7)(C), and a 3 level reduction for acceptance of responsibility, § 3E1.1, for a final offense level of 21. The PSR then recommended a criminal history category of II, which produced an imprisonment range of 41-51 months on the § 1951 count. The § 924(c) count carried a guideline sentence of 84 months consecutive, the mandatory minimum term required by statute. U.S.S.G. § 2K2.4(a). Neither side objected to these calculations, which I found correct and adopted accordingly.

## II.  SECTION 3553(a)

**A.    Sentencing Factors**

Section 3553(a) directs the court to consider:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), but it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place "any thumb on the scale favoring a guideline sentence," United States v. Sachsenmaier,

2

491 F.3d 680, 685 (7th Cir. 2007). The guidelines are but one of the § 3553(a) factors the court must consider in imposing sentence. United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert. denied, 129 S. Ct. 474 (2008).

In the present case, defendant faced a statutory mandatory minimum sentence on the § 924(c) count. Despite the advisory nature of the guidelines, courts may not rely on § 3553(a) to impose sentence below the level set by statute. See, e.g., United States v. Duncan, 479 F.3d 924, 930 (7th Cir. 2007); United States v. Roberson, 474 F.3d 432, 436-37 (7th Cir. 2007).

**B.   Analysis**

    **1.   The Offense**

On August 26, 2008, at about 2:10 p.m., defendant approached a Brinks driver who was delivering currency to the North Shore Bank in Shorewood, Wisconsin. Wearing a motorcycle helmet with the visor down, he pointed a gun at her and told her to "drop it," referring to the money she was transporting into the bank. The driver dropped the dolly she was using and backed away. Defendant took a Brinks bag containing about $60,000 and left the scene. Based on information from the driver and a bank employee, police determined that defendant, a customer of the bank, was likely the robber, and proceeded to his house. After securing the residence, police obtained a search warrant, recovering the cash taken in the robbery, along with a firearm. Defendant left Milwaukee for Chicago after the robbery, and police arrested him when he returned on December 1, 2008. In a post-arrest statement, he admitted committing the robbery.

This was obviously a very serious crime, which had a significant impact on the driver, requiring counseling and a change in her job duties. In his statement to the PSR writer,

3

defendant apologized for the crime and stated that he resorted to robbery because his family was desperate for money. He also expressed what appeared to be genuine remorse during his allocution.

**2.   The Defendant**

Defendant was thirty-six years old, with a prior record for this type of conduct, a 1999 conviction for aggravated vehicular hijacking with a weapon, for which he received a sentence of 9 years in prison. Thus, the instant offense did not represent the first occasion he robbed someone while armed.

The PSR described a difficult childhood, with defendant's mother involved in drug dealing and operation of a gambling house. Defendant was nevertheless able to graduate high school and go on to college. Although he failed to complete college, he did compile a decent work record, as set forth in the PSR; his earnings, as listed in ¶ 75, were greater than I usually see in these types of cases. He clearly had potential and seemed intelligent.

Defendant married in 2005, and he and his wife had two children, ages seven and two. His wife worked as a teacher, and they owned a home together. Although this offense placed a strain on the relationship, it appeared that they would stay together. Defendant's wife described him as a good father, and she spoke in support at sentencing.

Defendant advised the PSR writer that he did not currently have any drug problems, but his wife stated that he used marijuana until shortly before his arrest. Further exploration of this issue seemed appropriate.

**3.   The Sentence**

The guidelines called for a term of 41-51 months on count one, with count two requiring

4

84 months consecutive. Defendant requested a sentence at the minimum of 84 months, arguing that he acted under a diminished mental capacity. In support of his argument, he presented a report and testimony from R. Bronson Levin, Ph.D., a clinical and forensic psychologist. I found that while defendant's mental health status warranted some consideration, it did not support the requested sentence.[1]

Dr. Levin stated that based on defendant's difficult childhood and the lack of praise and support from his parents, defendant developed confidence issues and feelings of worthlessness. Prior to the robbery, defendant and his family experienced serious financial pressures due to expensive home and vehicle repairs, defendant's job loss and other debts. Dr. Levin stated that defendant's perceived inability to support the family contributed to his feelings of worthlessness.

Dr. Levin diagnosed major depressive disorder, explaining that defendant was experiencing a severe episode when he committed the instant offense. Dr. Levin stated that defendant did not set out to rob the bank, but the description of the crime contained in the report seemed somewhat inconsistent with this characterization. Defendant saw the driver having a hard time getting into the bank, retrieved his wife's gun and came back to the bank when he thought the truck would return (apparently the next day), wearing a helmet as a

---

[1] Defendant also asked me to consider his efforts to cooperate with the government, see United States v. Knox, Nos. 06-4101, 06-4376, 07-1813, 2009 WL 2136871, at *11 (7th Cir. July 20, 2009) ("[A]s a general matter, a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 motion."), and the sub-standard conditions at the Milwaukee County Jail where he was detained, see United States v. Turner, 569 F.3d 637, 642 (7th Cir. 2009) (stating that while "conditions of presentencing confinement are not considered as part of the § 3553(a) factors," "extraordinarily harsh conditions of confinement" might in some cases justify a reduced sentence).

5

disguise. This level of planning and premeditation seemed contrary to a diminished capacity type claim. Dr. Levin's report also discussed defendant's belief that having the money would allow him to clear the bills, have a fresh start and provide a cushion until he found a new job. This, too, seemed rather clear thinking for someone with a diminished capacity. But, Dr. Levin clearly stated during his testimony that defendant's depression diminished his ability to control his behavior and think things through, and I had no basis to doubt that this was true to some extent. See United States v. Pallowick, 364 F. Supp. 2d 923, 930 (E.D. Wis. 2005) (attempting to reconcile a diminished capacity claim with the level of planning required to commit bank robberies).

The diminished capacity sentencing guideline, U.S.S.G. § 5K2.13, provide a means of evaluating this type of claim. See United States v. Miranda, 505 F.3d 785, 792 (7th Cir. 2007); see also United States v. Anderson, 547 F.3d 831, 832 (7th Cir. 2008); United States v. Lange, 445 F.3d 983, 984 (7th Cir. 2006). Under that guideline, a downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Application note 1 explains that significantly reduced mental capacity means the defendant had a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful. U.S.S.G. § 5K2.13 cmt. n.1.[2]

---

[2] The guideline forbids a departure if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a

6

As the Seventh Circuit explained in <u>Miranda</u>, these considerations can also be expressed in § 3553(a) terms. First, a severe mental illness might make it difficult for a person to comply with the law, so a heavy sentence would not have a significant deterrent effect on persons in the defendant's class. Further, a court might determine that, with mental health treatment, the individual defendant is unlikely to re-offend and thus does not need a long sentence to specifically deter. 505 F.3d at 793. Second, and relatedly, if the mental illness is treatable, the goal of incapacitation may not be advanced by a heavy sentence. On the other hand, the court may determine that the only way to truly incapacitate an untreatable defendant is with a heavy prison sentence. <u>Id.</u> Finally, a person who would not have committed a crime but for his mental illness would be less deserving of punishment because he is not as evil, not as worthy of punishment, as one who would not be law abiding even if he were not mentally impaired. <u>Id.</u> at 793-94.

I saw no indication that defendant's mental illness prevented him from understanding the wrongfulness of his behavior. Dr. Levin's report stated that defendant heard the voice of conscience telling him that what he was doing was wrong, but he decided he was too far into it to back out. The report also stated that defendant was conflicted after he took the money and went to his Mosque to pray. Yet he did not then take any remedial action based on those conflicts; in fact, he left the city for several months. I also found it significant that defendant had a prior record for armed robbery. Dr. Levin's report stated that in that case defendant stole a motorcycle as compensation after the owner reneged on a bet. There was no claim of any

---

need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code. U.S.S.G. § 2K2.13. These restrictions are no longer binding, <u>see</u> <u>Miranda</u>, 505 F.3d at 792, but I may still consider them as factors weighing against a reduced sentence.

mental illness associated with that case, just a desire to take something he believed he should have. I had to consider the need to protect the public under these circumstances. Dr. Levin indicated that treatment was warranted, but it was not clear how treatment would affect the risk of recidivism. These factors weighed against a reduced sentence.

However, Dr. Levin further explained that defendant was too consumed by financial worry and depression to listen to his conscience, and that his ability to control himself was diminished due to his severe depression. The extent to which mental illness, as opposed to financial problems, caused defendant to commit a crime that he otherwise might not have committed was not totally clear. Many people are pushed to the point of desperation by financial trouble, yet do not resort to this sort of violent behavior. I accepted Dr. Levin's opinion that defendant's severe mental illness was a contributing factor in the commission of this crime; the depression distorted defendant's thinking, impeding his ability to find a lawful solution to his problems. As Dr. Levin noted, after defendant's parole in 2002, he maintained a law-abiding life for several years, avoiding criminal thinking. The onset of severe depression, coupled with financial problems, led to defendant's commission of this offense.

Therefore, I concluded that some consideration was appropriate based on the intersection of mental health issues and financial desperation, but not to the extent requested. Instead, under all of the circumstances, I found a sentence of 26 months on the robbery count followed by 84 months on the § 924(c) count sufficient but not greater than necessary. As discussed, this was a very serious crime, which placed the life of the driver in danger and had a significant and lasting impact on her. Therefore, a significant term was necessary to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A). I also found a significant term necessary to deter and protect the public. This represented defendant's second armed robbery-type

8

conviction, and the prison sentence he received for the first offense was obviously insufficient to deter him. The public needed to be protected from further such crimes. See 18 U.S.C. § 3553(a)(2)(B) & (C). Treatment issues had to be addressed initially via the Bureau of Prisons and later as conditions of supervision. See 18 U.S.C. § 3553(a)(2)(D).

This sentence provided all appropriate consideration for the financial and mental health issues that contributed to this offense, defendant's efforts to cooperate with the government, and the other positive personal qualities indicated in the record.[3] Defendant had family support and the intellectual ability to work to improve himself while incarcerated and while on supervised release, as he did during and after his previous prison sentence.

## III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 26 months on count one and 84 months consecutive on count two, for a total of 110 months. On release, I ordered him to serve three years of supervised release, with conditions including drug testing and treatment, mental health treatment and financial disclosure. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 30th day of July, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[3] Defendant apparently debriefed twice, but the government was unable to make use of his information. The below-guideline sentence I imposed provided all appropriate consideration for those efforts under Knox. Defendant provided no evidence that his conditions of pre-trial confinement warranted a further reduction.

9